IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 08-0614-02 |
| IRA WEINER, D.O. | : | |

**SURRICK, J.**                                                  JULY  1 , 2009

## MEMORANDUM

Presently before the Court are Defendant Ira Weiner's Motion to Dismiss Count One for Failure to Allege a Valid Conspiracy and Motion *in Limine* Barring the Use against Dr. Weiner of Hearsay Statements of Dr. Vorasingha and Habeeb Malik. (Doc. No. 42.) For the following reasons, the Motions will be denied.

## I. BACKGROUND[1]

Ira Weiner, D.O. ("Defendant"), is an osteopathic physician and surgeon who has been indicted on charges of naturalization fraud and conspiracy to commit naturalization fraud. (*See* Indictment, Doc. No. 1.) The charges arose out of an alleged scheme with co-Defendants Habeeb Malik ("Malik"), a businessman, and Thongchai Vorasingha ("Vorasingha"), a physician. The Indictment alleges that from 2000 through 2005, Malik operated a business out of his basement known as the Foundation of Human Services ("the Foundation"). The purpose of the Foundation was to assist foreign individuals in obtaining United States citizenship. The foreign individuals who sought the Foundation's services had difficulty reading and writing English. (*Id.* ¶ 8.) Foreign individuals must be able to speak, read, and write basic English to be eligible for United

---

[1] In considering a motion to dismiss an indictment, "the district court accepts as true the factual allegations set forth in the indictment." *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990) (citing *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n. 16 (1952)).

States citizenship. (*Id.* ¶ 5.) Those who are unable to meet this requirement because of a physical or mental impairment can apply for a waiver. (*Id.*)

For a $2,000 fee, Malik sent the foreign individuals to Defendant and Vorasingha for "examinations" to determine if they qualified for a waiver. (*Id.* ¶ 9.) It is alleged that Defendant's "examination" consisted of talking with the foreign individuals for approximately three minutes and talking privately with Malik for approximately ten minutes. (*Id.* ¶ 10.) Similarly, Vorasingha's "examination" consisted of drafting a written questionnaire that asked "if the applicant would agree if . . . Vorasingha diagnosed him or her with mild retardation." (*Id.* ¶ 11.) Vorasingha diagnosed the applicant based on the written answers. (*Id.*) Malik paid Defendant and Vorasingha $120 for each "examination." (*Id.* ¶ 9.)

After the examinations, Defendant and Vorasingha completed waiver forms stating that the individuals suffered from various maladies that included learning disorders, depression, anxiety, post traumatic stress disorder resulting from the hostilities overseas, and mental retardation that impaired their ability to learn English. (*Id.* ¶ 12.) The individuals did not actually suffer from these maladies. (*Id.*) Nevertheless, the individuals applied for United States citizenship through this waiver for which they did not really qualify. (*Id.* ¶ 13.)

Count One of the Indictment alleges a single conspiracy among the three Defendants as follows:

> From in or about a date unknown to the grand jury, beginning at least in or about 2000 through in or about July 2005, in the Eastern District of Pennsylvania, and elsewhere, defendants HABEEB MALIK, IRA WEINER, and THONGCHAI VORASINGHA conspired and agreed, together and with others known and unknown to the grand jury, to commit an offense against the United States, that is, to procure and obtain, contrary to law, naturalization as a United States citizen for foreign individuals by making false statements on the Form N-648, including statements that

2

the applicants suffered from various impairments that made it impossible for them to learn and understand the English language, in an effort to obtain waivers of the language requirement on the Form N-400 for the foreign applicants, in violation of Title 18, United States Code, Section 1425.

(*Id.* ¶ 7.)

The Indictment recites overt acts that underlie the alleged conspiracy that include the Defendant signing waivers on nine occasions in 2002 and 2003 that falsely stated the grounds for a medical waiver of the English requirement. (*Id.* ¶¶ 1-18.) In 2005, Vorasingha signed such waivers on two occasions. (*Id.* ¶¶ 19-22.) Defendant and Vorasingha are charged in separate, individual counts for each substantive violation of naturalization fraud. The Indictment includes a single conspiracy charge against Malik, Defendant, and Vorasingha.

Defendant has filed the instant Motion seeking dismissal of the single conspiracy charge in Count One based upon *Kotteakos v. United States*, 328 U.S. 750, 755 (1946). (*See* Doc. No. 42 at 2.) Defendant has also filed a related motion *in limine* seeking to exclude from evidence certain statements of Vorasingha and Malik.

## II.   LEGAL STANDARD

"An indictment is an accusation only, and its purpose is to identify the defendant's alleged offense . . . and fully inform the accused of the nature of the charges so as to enable him to prepare any defense he might have." *United States v. Stanfield*, 171 F.3d 806, 812 (3d Cir. 1999) (quotations and citations omitted). An indictment need include only "a plain, concise, and definite written statement of the essential facts constituting the offense charged" and "the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated." Fed. R. Crim. P. 7(c)(1). Federal Rule of Criminal Procedure

12(b)(3) permits a defendant to assert any "defect in the indictment" prior to trial. Fed. R. Crim. P. 12(b)(3)(B). The Third Circuit has summarized the standard for evaluating the sufficiency of an indictment as follows:

> We deem an indictment sufficient so long as it "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." Moreover, "no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution."

*United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007) (citations omitted), *cert denied*, -- U.S. --, 128 S. Ct. 1329 (2008). Dismissal under Rule 12(b)(3) "may not be predicated upon the insufficiency of the evidence to prove the indictment's charges." *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000). The court must assume that the allegations in the indictment are true. *Besmajian*, 910 F.2d at 1154; *see also United States v. Hall*, 20 F.3d 1084, 1087 (10th Cir. 1994) (noting that the indictment "is to be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true"); *accord United States v. Caicedo*, 47 F.3d 370, 371 (9th Cir. 1995); *United States v. Cadillac Overall Supply Co.*, 568 F.2d 1078, 1082 (5th Cir. 1978), *cert. denied*, 437 U.S. 903 (1978). The court must review the indictment "using a common sense construction," *United States v. Hodge*, 211 F.3d 74, 76 (3d Cir. 2000), "examine the [statutes at issue] as applied to the facts as alleged in the indictment, and determine whether the defendant's conduct, as charged, 'reflect[s] a proper interpretation of criminal activity under the relevant criminal statute[s],'" *United States v. Shenandoah*, 572 F. Supp. 2d 566, 571 (M.D. Pa. 2008) (citing *United States v. Delle Donna*, 552 F. Supp. 2d 475, 482 (D.N.J.

4

2008)) (citations omitted). A challenge to the sufficiency of an indictment under Rule 12(b)(3)(B) "should be decided based on the facts alleged within the four corners of the indictment, not the evidence outside of it." *United States v. Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007).

### III. DISCUSSION

Defendant argues that Count One must be dismissed because it fails to allege a single conspiracy among the three Defendants. (*See* Doc. No. 42 at 9.) Defendant argues that Count One instead alleges two separate conspiracies – one between Malik and Defendant, and another between Malik and Vorasingha – which constitutes "the classic 'rimless hub-and-spoke conspiracy' that violates *Kotteakos v. United States*, 328 U.S. 750, 755 (1946)." (*See id.*) Defendant also argues that because the Indictment alleges two conspiracies rather than one, any hearsay statements of Malik and Vorasingha that the Government offers "may not be admitted against [Defendant] under the co-conspirator exception to the hearsay rule." (*Id.* at 10.)

The Government responds that "all that is required to defeat a pretrial motion to dismiss [is an allegation] that these three defendants conspired with each other to commit a crime." (Doc. No. 48 at 3.) The Government argues that it is "immaterial" whether Defendant had contact with or knew Vorasingha, because "a single conspiracy may encompass members who neither know one another's identities . . . nor specifically know of one another's involvement." (*Id.* at 4.) The crux of the Government's argument is that "it was foreseeable to [Defendant] that there were other doctors who were performing the same role as he" because of Malik's knowledge about the immigration process, his creation of the Foundation, his "numerous clients," and his "established procedure for committing the fraud." (*Id.* at 4-5.)

5

A.  **Sufficiency of Count One**

Count One sufficiently alleges a single conspiracy claim among Malik, Defendant, and Vorasingha. It alleges that the three Defendants "conspired and agreed" to commit an offense against the United States. (*See* Indictment ¶ 7.) It identifies the specific offense as the unlawful procurement of naturalization in violation of 18 U.S.C. § 1425. (*Id.*) The means by which Defendant committed the offense is also identified: Defendant is alleged to have carried out the offense by making false statements on the Form N-648. (*Id.*) Even more specifically, Defendant is alleged to have included statements on the Form N-648 that applicants suffered from various impediments that made it impossible for them to learn and understand English, thereby entitling them to a waiver of the English requirement. (*Id.*)

These allegations permit Defendant "to prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution." *Kemp*, 500 F.3d at 280. Defendant is "sufficiently apprised of what he must be prepared to meet." *Id.* Count One contains the elements of the offense, the underlying factual circumstances, and citations to the relevant law. *See* Fed. R. Crim. P. 7(c)(1) (requiring indictment to include concise statement of facts and citation to law that the defendant is alleged to have violated). Hence, Count One sufficiently alleges a single conspiracy to commit naturalization fraud.

B.  **Effect of *Kotteakos* and its Progeny**

Defendant contends that Count One must be dismissed because it alleges the existence of two conspiracies, not one. Defendant compares the alleged conspiracy in this case to the hub-

6

and-spoke conspiracy found in *Kotteakos*.² *See* 328 U.S. at 767. In *Kotteakos*, the indictment named thirty-two defendants in a single conspiracy to obtain loans under a Federal Housing Administration program based upon fraudulent applications. *Id.* at 752. The only connection the government proved between the defendants was their common use of co-defendant Simon Brown, the president of a lumber company who had experience in applying for loans under the National Housing Act and who used his expertise to assist others in acquiring loans. *Id.* at 753. Brown processed the loan applications knowing that the applications contained fraudulent information. *Id.* "In many cases the other defendants did not have any relationship with one another, other than Brown's connection with each transaction." *Id.* at 754. At trial, the government presented evidence of at least eight separate conspiracies, with Brown at the center of each. *Id.* at 755. The trial court instructed the jury that they could convict only if they found a single, overarching conspiracy between the defendants. *Id.* at 767. The Supreme Court reversed the defendants' convictions, holding that the evidence at trial did not show the single "mass conspiracy" that was charged in the indictment. *Id.* at 777. Rather, the evidence showed a number of separate conspiracies. *Id.* Since the peripheral members were not shown to have been aware of one another and to have done something in furtherance of a single, illegal enterprise, the conspiracy lacked "the rim of the wheel to enclose the spokes." *Id.* at 755. No "spoke" gained from the fact that others were involved in the scheme.

When a defendant is put on notice that the scope of the conspiracy extends beyond his

---

² The "hub-and-spoke" or "wheel" conspiracy describes an arrangement of co-conspirators around a central figure, or "hub," who deals separately with peripheral figures, or "spokes." *See United States v. Castro*, 776 F.2d 1118, 1124 n.4 (3d Cir. 1985) (describing same).

7

own activities, he may be held to the actual scope of the organization. *See Blumenthal v. United States*, 332 U.S. 539, 558 (1947). In *Blumenthal*, three salesmen were convicted of conspiring to sell whiskey at above-ceiling prices. *Id.* at 541. The Supreme Court held that while "each salesman aided in selling only his part," he could nevertheless form part of a single large conspiracy because he "knew or must have known that others unknown to [him] were sharing in so large a project." *Id.* at 559. Distinguishing these facts from *Kotteakos*, the Supreme Court noted that

> no two of those [loan] agreements [in *Kotteakos*] were tied together as stages in the formation of a large all-inclusive combination, all directed to achieving a single unlawful end or result. On the contrary each separate agreement had its own distinct, illegal end. Each loan was an end in itself, separate from all others, although all were alike in having similar illegal objects. Except for Brown, the common figure, no conspirator was interested in whether any loan except his own went through. And none aided in any way, by agreement or otherwise, in procuring another's loan. The conspiracies therefore were distinct and disconnected, not parts of a larger general scheme, both in the phase of agreement with Brown and also in the absence of any aid given to others as well as in specific object and result. There was no drawing of all together in a single, over-all, comprehensive plan.

*Id.* at 558. In contrast, the salesmen in *Blumenthal* "knew of and joined in the overriding scheme" and "sought a common end" to sell the whiskey, so that "the several agreements were essential and integral steps." *Id.* at 559. The salesmen knew that the wholesaler had received an entire carload of whiskey, which was far more than each had bought individually. *Id.* The Court found a single conspiracy because even though "each salesman aided in selling only his part," he also "knew the lot to be sold was larger and thus that he was aiding in a larger plan." *Id.*

There must be some interdependence among the members of a single conspiracy so that each member depends upon, is aided by, or has an interest in the success of the others. *See Kemp*, 500 F.3d at 287-89. In *Kemp*, the defendants were officials of the City of Philadelphia

8

who were convicted of a variety of corruption charges, including a single conspiracy charge. *Id.* at 264. Two of the defendants challenged their conspiracy convictions on the grounds that the government had charged a "hub-and-spokes" conspiracy but failed to prove the existence of a rim connecting the spokes, similar to the situation in *Kotteakos*. *Id.* at 287-88. They argued that City officials were the hub who entered into separate agreements with the defendants as the unconnected spokes. *Id.* at 288. The Third Circuit agreed, finding that the evidence at trial proved only the existence of multiple separate conspiracies, not the single conspiracy that was charged.[3] *Id.* The court observed that "there was an insufficient degree of interdependence between [several of the co-conspirators]," which made it "difficult to conceive" how their activities "were interdependent or mutually supportive" to support a single conspiracy charge among them. *Id.* at 290. The court found "no evidence" that the defendants "should have known that the conspiracy involved parts beyond [two of the other defendants]," notwithstanding the fact that the indictment charged multiple other defendants with the single conspiracy. *Id.* at 289; *see also United States v. Chandler*, 388 F.3d 796, 811 (11th Cir. 2004) (stating that "although each of these alleged spoke conspiracies had the same goal, there was no evidence that this was a common goal").

*Kotteakos*, *Blumenthal*, and *Kemp* make clear that the existence of a single conspiracy or multiple conspiracies hinges on factual issues that arise at trial. An indictment that alleges a single conspiracy can result in an impermissible variance if the evidence adduced at trial shows only the existence of multiple conspiracies. *See Kemp*, 500 F.3d at 290. In this case, the

---

[3] The Circuit Court nevertheless found that the variance between the indictment and proof presented at trial did not prejudice a substantial right of the defendants and the convictions were affirmed.

Government will have to prove facts at trial that allow the jury to find interdependence between Defendant and Vorasingha as spokes of the conspiracy with Malik, the hub. *See id.* The Government will have to offer evidence that Defendant and Vorasingha were "mutually supportive." *Id.* At this stage, we must accept the allegations in the Indictment as true. *See Hall*, 910 F.2d at 1154 (noting that the indictment "is to be tested solely on the basis of the allegations made on its face, and such allegations are to be taken as true"). We must decide the sufficiency of the Indictment based on the facts "alleged within the four corners," not the evidence outside of it. *Vitillo*, 490 F.3d at 321. The facts within the four corners of the Indictment allege a single conspiracy between Malik, Defendant, and Vorasingha. The burden now rests with the Government to prove this allegation at trial. The Government argues that it has the evidence necessary to do this.[4] (*See* Doc. No. 48 at 5 ("The government is prepared to prove the existence of the single conspiracy at trial.").) Defendant's argument based upon *Kotteakos* is premature. *See, e.g.*, *United States v. Rios*, No. 96-0540-06, 1997 WL 356329, at *2 (E.D. Pa. June 20, 1997) (denying motion to dismiss a count in the indictment as premature under *Kotteakos* because the determination "necessarily involves the evaluation of the evidence presented by the government" at trial); *United States v. Simon*, 186 F. Supp. 223, 227-28 (S.D.N.Y. 1960) (denying motion to dismiss as premature under *Kotteakos* because the "indictment pleads one conspiracy on its face, and this motion is addressed to the pleading," and

---

[4] At oral argument, the Government asserted that Defendants Weiner and Vorasingha had to have known that other doctors were involved, even though they did not know each other, because the same forms were used with each applicant and it would have been too suspicious to carry out the enterprise with the same doctor every time. In other words, the Government asserted that its evidence at trial will show that the existence of other doctors was entirely foreseeable.

noting that "[i]f there is a variance in proof at the trial from what is charged in the indictment, a motion will then be in order").

C. **Motion *in Limine* to Exclude Hearsay Statements of Malik and Vorasingha**

Finally, Defendant argues that because "the Indictment does not allege that [Defendant] and . . . Vorasingha conspired together," any hearsay statements of Malik and Vorasingha "may not be admitted against [Defendant] under the co-conspirator exception to the hearsay rule." (Doc. No. 42 at 10.) For the reasons discussed above, the Indictment sufficiently alleges that Defendant conspired with the other Defendants in a single conspiracy. Thus, Defendant's motion *in limine* will be denied. At an appropriate time during the trial the Court will determine the admissibility of the co-conspirator statements.

IV. **CONCLUSION**

For these reasons, Defendant's Motions will be denied.

An appropriate Order will follow.

BY THE COURT:

*[signature]*

_____
R. Barclay Surrick, J.