IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 08-0614-02 |
| IRA WEINER, D.O. | : | |

**SURRICK, J.**                                                                                                                             JULY  2 , 2009

### MEMORANDUM

Presently before the Court are Defendant Ira Weiner's (1) Motion for Severance of Defendants under Rule 8 and/or Rule 14, (2) Motion *in Limine* for Exclusion of Statements of Habeeb Malik under *Bruton v. United States*, and (3) Motion *in Limine* to Exclude Testimonial Out-of-Court Statements of Co-Defendants under *Crawford v. United States*. (Doc. No. 42.) For the following reasons, the Motions will be denied.

### I.    BACKGROUND[1]

Ira Weiner, D.O. ("Defendant"), is an osteopathic physician and surgeon who has been indicted on charges of naturalization fraud and conspiracy to commit naturalization fraud. (*See* Indictment, Doc. No. 1.) The charges arose out of an alleged scheme with co-defendants Habeeb Malik ("Malik"), a businessman, and Thongchai Vorasingha ("Vorasingha"), a physician. The Indictment alleges that from 2000 through 2005, Malik operated a business out of his basement

---

[1] In reciting this background, and for purposes of deciding the Motion for Severance, we accept as true the allegations in the Indictment. *See United States v. Liss*, 265 F.3d 1220, 1228 (11th Cir. 2001) (noting that "[t]he propriety of joinder 'is to be determined before trial by examining the allegations contained in the indictment'") (citation omitted); *United States v. Harrelson*, 754 F.2d 1153, 1176 (5th Cir. 1985) ("The propriety of joinder under Rule 8 is determined by the initial allegations of the indictment, which are accepted as true absent arguments of prosecutorial misconduct.") (citing *Schaffer v. United States*, 362 U.S. 511, 513 (1960)), *cert. denied*, 474 U.S. 908 (1985).

known as the Foundation of Human Services ("the Foundation"). The purpose of the Foundation was to assist foreign individuals in obtaining United States citizenship. The foreign individuals who sought the Foundation's services had difficulty reading and writing English. (*Id.* ¶ 8.) Foreign individuals must be able to speak, read, and write basic English to be eligible for United States citizenship. (*Id.* ¶ 5.) Those who are unable to meet this requirement because of a physical or mental impairment can apply for a waiver. (*Id.*)

For a $2,000 fee, Malik sent the foreign individuals to Defendant and Vorasingha for "examinations" to determine if they qualified for a waiver. (*Id.* ¶ 9.) It is alleged that Defendant's "examination" consisted of talking with the foreign individuals for approximately three minutes and talking privately with Malik for approximately ten minutes. (*Id.* ¶ 10.) Similarly, Vorasingha's "examination" consisted of drafting a written questionnaire that asked "if the applicant would agree if . . . Vorasingha diagnosed him or her with mild retardation." (*Id.* ¶ 11.) Vorasingha diagnosed the applicants based on the written answers. (*Id.*) Malik paid Defendant and Vorasingha $120 for each "examination." (*Id.* ¶ 9.)

After the examinations, Defendant and Vorasingha completed waiver forms stating that the individuals suffered from various maladies that included learning disorders, depression, anxiety, post traumatic stress disorder resulting from the hostilities overseas, and mental retardation that impaired their ability to learn English. (*Id.* ¶ 12.). Nevertheless, the individuals did not actually suffer from these maladies. (*Id.*) As a result of the conspiracy, the individuals applied for United States citizenship through this waiver for which they did not really qualify. (*Id.* ¶ 13.)

Count One of the Indictment alleges a single conspiracy among the three defendants as

follows:

> From in or about a date unknown to the grand jury, beginning at least in or about 2000 through in or about July 2005, in the Eastern District of Pennsylvania, and elsewhere, defendants HABEEB MALIK, IRA WEINER, and THONGCHAI VORASINGHA conspired and agreed, together and with others known and unknown to the grand jury, to commit an offense against the United States, that is, to procure and obtain, contrary to law, naturalization as a United States citizen for foreign individuals by making false statements on the Form N-648, including statements that the applicants suffered from various impairments that made it impossible for them to learn and understand the English language, in an effort to obtain waivers of the language requirement on the Form N-400 for the foreign applicants, in violation of Title 18, United States Code, Section 1425.

(*Id.* ¶ 7.)

The Indictment recites the overt acts that underlie the alleged conspiracy that include the Defendant signing waivers on nine occasions in 2002 and 2003 that falsely stated the grounds for a medical waiver of the English requirement. (*Id.* ¶¶ 1-18.) In 2005, Vorasingha signed such waivers on two occasions. (*Id.* ¶¶ 19-22.) Defendant and Vorasingha are charged under separate, individual counts for each substantive violation of naturalization fraud. The Indictment includes a single conspiracy charge against Malik, Defendant, and Vorasingha.

Defendant has filed the instant Motion asserting that Defendant has been improperly joined with Vorasingha and that a severance is required. (*See* Doc. No. 42 at 3.) Defendant has also filed two related motions *in limine* seeking to exclude certain statements made by his co-defendants. (*See id.* at 6-8.)

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 8(b) provides that an

> indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in

> one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. P. 8(b). The Third Circuit has interpreted Rule 8(b) as permitting "joinder of defendants charged with participating in the same . . . conspiracy, even when different defendants are charged with different acts, so long as indictments indicate all the acts charged against each joined defendant (even separately charged substantive counts) are charged . . . as acts undertaken in furtherance of, or in association with, a commonly charged . . . conspiracy." *United States v. Eufrasio*, 935 F.2d 553, 567 (3d Cir. 1991), *cert. denied*, 502 U.S. 925 (1991). The Third Circuit and Second Circuit agree that "[t]he mere allegation of a conspiracy presumptively satisfies Rule 8(b), since the allegation implies that the defendants named have engaged in the same series of acts or transactions constituting an offense." *United States v. Irizarry*, 341 F.3d 273, 289 n.5 (3d Cir. 2003) (quoting *United States v. Friedman*, 854 F.2d 535 (2d Cir. 1988)), *cert. denied*, 540 U.S. 1140 (2004).

When an indictment charges two or more defendants together, Federal Rule of Criminal Procedure 14(a) permits a court to sever the defendants' trials if "the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). When the defendants have been properly joined under Rule 8(b), "a district court should grant severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Voigt*, 89 F.3d 1050, 1094 (3d Cir. 1996) (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993)), *cert. denied*, 519 U.S. 1047 (1996). In evaluating the risk of prejudice, courts must

consider "the facts in each case." *Zafiro*, 506 U.S. at 539. "When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but . . . less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Id.* (citations omitted).

Federal courts have "a preference for joint trials of defendants who are indicted together." *Voigt*, 89 F.3d at 1094. Moreover, Rule 8(b) encourages charging multiple defendants in the same indictment or information "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed. R. Crim. P. 8(b). This preference is especially strong in conspiracy cases because "joint trials of defendants charged under a single conspiracy aid the finder of fact in determining the full extent of the conspiracy." *Voigt*, 89 F.3d at 1094 (internal quotation marks omitted); *see also United States v. Provenzano*, 688 F.2d 194, 199 (3d Cir. 1982) (noting that "it is preferable to have all of the parties tried together so that the full extent of the conspiracy may be developed") (citations omitted), *cert. denied*, 459 U.S. 1071 (1982). This preference arises because joint trials "promote efficiency in the courts and serve the interests of justice by preventing 'the scandal and inequity of inconsistent verdicts.'" *Voigt*, 89 F.3d at 1094 (quoting *Zafiro*, 506 U.S. at 537). Nevertheless, the Third Circuit has noted that

> no defendant should ever be deprived of a fair trial because it is easier or more economical for the government to try several defendants in one trial rather than in protracted multiple trials. The goal of the judicial process is not to decide cases as quickly and as inexpensively as possible.

*United States v. Boscia*, 573 F.2d 827, 833 (3d Cir. 1978), *cert. denied*, 436 U.S. 911 (1978).

Ultimately, however, "[d]efendants seeking a severance bear a 'heavy burden' and must

5

demonstrate not only that the court would abuse its discretion if it denied severance, but also that the denial of severance would lead to a clear and substantial prejudice resulting in a manifestly unfair trial." *United States v. Lore*, 430 F.3d 190, 205 (3d Cir. 2005) (citing *Zafiro*, 506 F.3d at 539) (internal quotation marks omitted). "[A] district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Urban*, 404 F.3d 754, 775 (3d Cir. 2005) (quoting *Zafiro*, 506 F.3d at 539). "Mere allegations of prejudice are not enough," *United States v. Reicherter*, 647 F.2d 397, 400 (3d Cir. 1981), and courts will not grant severance merely because defendants "may have a better chance of acquittal in separate trials," *Zafiro*, 506 U.S. at 540; *see also Eufrasio*, 935 F.2d at 567 ("As long as the crimes charged are allegedly a single series of acts or transactions, separate trials are not required.").

## III. DISCUSSION

Defendant makes three arguments in support of severance. First, Defendant argues that the Indictment improperly joins him with Vorasingha under Rule 8(b) because the Indictment fails to allege a conspiracy between them. (Doc. No. 42 at 3.) Next, Defendant argues that severance is required because joinder would prejudice Defendant's right to a fair trial under Federal Rule of Criminal Procedure 14. (*Id.* at 4.) Finally, Defendant argues that severance is required because a joint trial – and the concomitant admission of a statement made by Malik in a proffer session – would violate the Confrontation Clause as interpreted in *Bruton v. United States*, 391 U.S. 123 (1968), and in *Crawford v. Washington*, 541 U.S. 36 (2004).

### A. Sufficiency of the Conspiracy Allegations in the Indictment

Defendant first argues that he has been improperly joined with Vorasingha because the Indictment fails to allege a conspiracy between them. However, for the reasons set forth in the Memorandum dated July 1, 2009 relating to Defendant's motion to dismiss, (*see* Doc. No. 63), the Indictment sufficiently alleges the existence of a single conspiracy between Malik, Defendant, and Vorasingha. The Government correctly argues that "since the indictment does, in fact, allege a proper conspiracy," Defendant's reliance on the Indictment as the basis for severance "fails *ab initio*." (Doc. No. 48 at 5.)

In addition, joinder of Defendant with Malik and Vorasingha is proper under Rule 8(b). Defendant is charged with participating in the same conspiracy with Malik and Vorasingha. The "mere allegation" of this conspiracy "presumptively satisfies Rule 8(b)," since the allegation implies that Defendant "engaged in the same series of acts or transactions constituting an offense." *Irizarry*, 341 F.3d at 289 n.5. Although Defendant is charged with performing acts different from Vorasingha set forth in different substantive counts, and at different times, joinder is nonetheless proper because the acts were allegedly undertaken in furtherance of the same commonly-charged conspiracy to commit naturalization fraud. *See Eufrasio*, 935 F.2d at 567 (noting that Rule 8(b) permits "joinder of defendants charged with participating in the same . . . conspiracy, even when different defendants are charged with different acts, so long as indictments indicate all the acts charged against each joined defendant (even separately charged substantive counts) are charged . . . as acts undertaken in furtherance of, or in association with, a commonly charged . . . conspiracy"). Since the Indictment sufficiently alleges a conspiracy, joinder of Defendant with Malik and Vorasingha is not improper.

    **B.**    **Defendant's Right to a Fair Trial**

Defendant next argues that his joinder with Vorasingha will prejudice Defendant's right to a fair trial under Rule 14. (*See* Doc. No. 42 at 4.) Severance is appropriate under Rule 14 "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Voigt*, 89 F.3d at 1094. We find no such risk here that cannot be cured by a limiting instruction. Defendant has been indicted together with Malik and Vorasingha in a single charge of conspiracy. They are alleged to have participated in the same series of acts that constitute naturalization fraud. A joint trial will permit the finder of fact to determine the full extent of this conspiracy. *See Provenzano*, 688 F.2d at 199 (noting that "it is preferable to have all of the parties tried together so that the full extent of the conspiracy may be developed"). A denial of severance would not lead "to a clear and substantial prejudice resulting in a manifestly unfair trial" since the facts can be easily compartmentalized. *Lore*, 430 F.3d at 205. The Indictment does not allege a large number of defendants. The underlying facts are not complicated. Under these circumstances, a jury "will be able to make a reliable judgment about guilt or innocence." *Urban*, 404 F.3d at 775.

Defendant maintains that there is a danger of a multifaceted evidentiary "spillover" because the Indictment alleges other wrongful conduct by Malik, including his creation of the Foundation and his disposition of the funds associated therewith. (Doc. No. 42 at 9.) However, we "see no reason why . . . the fact that the grand jury charged one defendant separately with an additional criminal act somehow would interfere with the petite jury's ability to consider the evidence against each defendant on each count separately." *Lore*, 430 F.3d at 205. Indeed, Rule 8(b) expressly provides that "[a]ll defendants need not be charged in each count." Fed. R. Crim.

P. 8(b). To the extent that a joint trial presents any risk of evidentiary spillover, it can be cured with an appropriate limiting instruction.

### C. Admission of Statements Made by Malik

Defendant's final argument in support of severance is that a joint trial "would compromise the specific trial right to confront witnesses, and prevent the jury from making a reliable judgment about guilt or innocence." (Doc. No. 42 at 5.) Defendant's argument derives from *Bruton*, 391 U.S. at 123, and *Crawford*, 541 U.S. at 36. Defendant argues that the admission of certain out-of-court statements made by Malik to Internal Revenue Service Special Agents during an October 10, 2006 proffer session would violate the Confrontation Clause and justifies separate trials.[2] (*Id.*) We have reviewed the interview notes in their entirety. We are satisfied that the Confrontation Clause does not mandate separate trials.

During the proffer session, Malik identified Defendant as one of several doctors who provided medical examinations to the Foundation clients. (*See* Doc. No. 48 at 28.) The Special Agents' interview notes from the proffer session provide in pertinent part as follows:

> The doctors that Habeeb Malik has used for the medical exams for the clients of the Foundation are: [Defendant], Joseph Poleo, FNU Kardos, FNU Marrianne, FNU Bessey of Cherry Hill, and FNU Hershemberg of Cherry Hill. Habeeb Malik found these doctors by being referred by other doctors and also a search of the yellow pages. [Defendant] was the family doctor of Habeeb Malik's family for a short time, and that is how he started to use him for exams. Habeeb Malik stated that his selection of the doctors was based on his finding of doctors with the greatest level of competency. Of all the doctors, only [Defendant] is a[n] MD, all the others are Psychologists. During the evaluations, the doctors use a list of questions to evaluate

---

[2] Malik made these statements pursuant to a proffer letter. (*See* Doc. No. 48 at 10 n.1.) The Government has indicated that it will "abide by the terms of that agreement and not seek to admit those statements in its case in chief unless Malik or his attorney makes any statements or arguments during the trial contrary to the statements Malik made during his proffer session." (*Id.*)

9

> the clients. Habeeb Malik does not coach or share the questions from the exams with his clients prior to their exam. Habeeb Malik has never asked the questions on behalf of a doctor, all the clients physically see the doctors.

(*See* Doc. No. 48 at 28.) The interview notes then address the conduct of Defendant and the other physicians in relation to the examinations underlying the Indictment:

> Habeeb Malik stated that the doctors used in regards to the work of the Foundation are of the highest integrity and do not falsify the results of the tests so that the Foundation's clients will get exempted from the English Language test. Habeeb Malik explained that the doctors' visits last from 30 to 60 minutes. Sometimes the U.S. requires a second opinion from the applicants that the Foundation assists, and these clients are taken to another doctor. Habeeb Malik stated that there have been instances where his Doctors have found a client capable of learning the English language.

(*Id.* at 31.) We conclude that *Bruton* does not foreclose the admission of these statements against Malik at a joint trial with Defendant.[3]

In *Bruton*, the Supreme Court held that a defendant is deprived of his rights under the Confrontation Clause when his non-testifying co-defendant's confession naming him as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the co-defendant. *See* 391 U.S. at 123. The Court reasoned that "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Id.* at 135. One such context is "where the powerfully incriminating extrajudicial statements of a co-defendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial . . . ." *Id.* at 136.

---

[3] Defendant does not specify which statements, in particular, present *Bruton* concerns. We reviewed the interview notes and their entirety and reproduced above the sections that discuss Defendant.

10

*Bruton* created a "very narrow exception" to the "almost invariable assumption of the law that jurors follow their instructions." *Richardson v. Marsh*, 481 U.S. 200, 206 (1987).

If an extrajudicial statement is not incriminating on its face and becomes so only when linked with evidence introduced later at trial, the narrow exception in *Bruton* does not apply. *Id.* at 208. In *Richardson*, the defendant and a co-defendant were convicted of felony-murder. *Id.* at 200. At the joint trial, the co-defendant's confession was admitted over the defendant's objection. *Id.* The confession had been redacted to omit all reference to the defendant and to omit all indication that anyone other than the co-defendant and a third accomplice participated in the crime. *Id.* The confession was not incriminating on its face and became so only when linked with evidence introduced later at trial (the defendant's own testimony). *Id.* at 208. The Supreme Court held that the Confrontation Clause was not violated by the admission of a non-testifying co-defendant's confession with a proper limiting instruction because the confession was redacted to eliminate not only the defendant's name, but any reference to the defendant's existence. *Id.* The Court reasoned "it is a less valid generalization that the jury will not likely obey the instruction to disregard the evidence" when it becomes incriminating only after linkage with other evidence introduced later at trial. *Id.* In other words, "the judge's instruction may well be successful in dissuading the jury from entering onto the path of inference" when an inference is required. *Id.* In contrast, "[s]pecific testimony that 'the defendant helped me commit the crime' is more vivid than inferential incrimination, and hence more difficult to thrust out of mind." *Id.* The extrajudicial statement must be incriminating on its face in order to trigger a *Bruton* concern. Exclusion is not warranted under *Bruton* if the statement merely becomes incriminating by inference after its linkage with other evidence at trial.

The extrajudicial statements of Malik at the October 10, 2006 proffer session are not incriminating on their face. Malik told the Special Agents that Defendant and the other doctors were "of highest integrity" and they "do not falsify the results of the tests." (Doc. No. 25 at 31.) Malik further stated that the examinations lasted for as long as an hour and did not always result in the doctor issuing a waiver. (*Id.*) This is not "powerfully incriminating" evidence against Defendant. *See Bruton*, 391 U.S. at 135. Indeed, none of Malik's other statements in the October 10, 2006 interview notes powerfully incriminates Defendant. *Bruton* does not apply to these facts.[4] *See United States v. Belle*, 593 F.2d 487, 493 (3d Cir. 1979) (en banc) ("When a co-defendant's extrajudicial statement does not directly implicate the defendant, however, the *Bruton* rule does not come into play."); *United States v. Hendrickson*, 542 F.2d 21, 22 (6th Cir. 1976) ("*Bruton* is clearly not applicable here since the redacted statements heard by the jury in no way incriminate the co-defendants which is a necessary prerequisite."); *United States v. Deutsch*, 451 F.2d 98, 116 (2d Cir. 1971) (noting that "since these documents did not contain any inculpatory statements as to [the defendant], *Bruton* is not applicable"), *cert. denied*, 404 U.S. 1019 (1972).

The Government appropriately relies on *United States v. Rubio*, 709 F.2d 146, 148 (2d Cir. 1983), in support of admitting Malik's statements at the joint trial. In that case, Rubio was charged in a narcotics conspiracy with her husband, Rosado. *Id.* The couple arranged to meet in

---

[4] Defendant relies on *United States v. Richards*, 241 F.3d 335, 341 (3d Cir. 2001), for the proposition that "[t]he case law precludes admission of a statement that refers to 'Malik's doctors' (the identity of whom will be ascertainable simply by lifting one's eyes to counsel table), let alone a statement that refers to [Defendant] by name." (Doc. No. 42 at 7.) *Richards* is inapposite because unlike the confession in *Richards* that was incriminating, Malik's statements are not incriminating.

a Manhattan hotel with an undercover agent whom they believed would sell them cocaine. *Id.* Upon her arrest in the hotel lobby, Rubio was carrying a triple beam scale and a bottle of Clorox bleach, items commonly used to weigh and test cocaine. *Id.* at 154. The challenged testimony consisted of Rosado's statement that the couple was at the hotel for a weekend vacation, and that Rubio was going to use the triple beam scale and the Clorox to do some cooking and cleaning while they were there. *Id.* The trial court admitted the statements and instructed the jury to consider them only with respect to Rosado and to disregard them as to Rubio. *Id.* The trial court also instructed the jury concerning the evidentiary value of false exculpatory statements. *Id.* On appeal, Rubio argued that it was error under *Bruton* to admit the statements into evidence "since the jury could have inferred that the statements by Rosado, if found to be false, were made to conceal improper conduct by herself." *Id.* The Second Circuit rejected this argument as "meritless," reasoning that the statements "were not inculpatory as to Rubio" and did not involve shifting of blame to her. *Id.* Moreover, "nothing new or incriminating was presented to the jury which had not already been presented through the testimony of [a federal agent], who testified with regard to Rubio's presence at the [hotel] and the fact that she had shown him both the scale and the bottle of Clorox." *Id.* at 155.

Malik's statements in this case are similar to the husband's statements in *Rubio*. *See* 709 F.2d at 154. As the husband in *Rubio* made statements about his wife's conduct that the Second Circuit found were not inculpatory as to her, Malik made statements to the Special Agents that are not inculpatory as to Defendant. *See id.* Malik did not state that Defendant or any other doctor engaged in criminal conduct. Moreover, as the triple beam scale and the Clorox were "nothing new" to the jury in *Rubio*, the fact that Defendant provided medical examinations to

13

Malik's clients will be nothing new to the jury in this case. Nine individuals already testified at the grand jury that they sought Malik's assistance to obtain medical waivers from Defendant. (*See* Indictment at 4-7.) The Government will be able to prove that Defendant provided medical examinations in ways other than Malik's statements at the proffer session.

While the Government may seek to introduce Malik's statements to show consciousness of guilt, the statements are not powerfully incriminating raising a *Bruton* concern any more than in *Rubio* or in other cases that have addressed false exculpatory statements. *See, e.g.*, *United States v. Brown*, 551 F.2d 639, 647 (5th Cir. 1977) (finding that false exculpatory statements, "while perhaps indicative of consciousness of guilt on the part of [the declarants], did not at all reflect [the defendant's] guilt" and thus their admission into evidence did not violate *Bruton* rule), *rev'd in part on other grounds upon reh'g*, 551 F.2d 639 (5th Cir. 1977); *see also United States v. Escobar*, 50 F.3d 1414, 1422 (8th Cir. 1995) (finding that *Bruton* did not bar the admission of a false exculpatory statement because the statement was used only to show that the declarant, a co-defendant, was acquainted with the defendants and that the declarant had lied about this fact; the statement "by itself d[id] not implicate [the defendants] in any wrongdoing"). Defendant's motion to sever the trial based on *Bruton* will be denied.

### D. Motions *in Limine* Based on *Bruton* and *Crawford*

In addition to moving for severance based on Malik's statements, Defendant has filed motions *in limine* seeking to exclude Malik's statements and the statements of his co-defendants under *Bruton* and *Crawford*. (*See* Doc. No. 42 at 5 n.4.) Defendant seeks to exclude Malik's statements at a joint trial on the grounds that their admission would violate *Bruton*, even if the statements are not offered against Defendant. (*See* Doc. No. 42 at 6.) For the reasons discussed

above, Malik's October 10, 2006 statements do not raise a *Bruton* concern. Defendant's motion *in limine* to exclude them on that basis will therefore be denied.

Defendant also seeks to exclude Malik's statements at a joint trial on the grounds that their admission would violate *Crawford*, 541 U.S. at 38, and the Confrontation Clause. The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him." U.S. Const. amend VI. This means that "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Crawford*, 541 U.S. at 68. In *Crawford*, the Supreme Court held that an accused's confrontation right must be honored when a witness's out-of-court statements to law enforcement are admitted against the accused. *Id. Crawford* does not expressly overrule the *Bruton* line of decisions. *See United States v. Harper*, 527 F.3d 396, 403 (5th Cir. 2008) (noting that the Supreme Court in *Crawford* "did not expressly overrule a line of its decisions having their genesis in *Bruton*"), *cert. denied*, 129 S. Ct. 212 (2008); *United States v. Rodríguez-Durán*, 507 F.3d 749, 768-70 (1st Cir. 2007) (separately analyzing admission of an out-of-court statement for *Bruton* error and *Crawford* error), *cert. denied*, 128 S. Ct. 1726 (2008); *United States v. Williams*, 429 F.3d 767, 773 n.2 (8th Cir. 2005) ("We note that *Crawford* did not overrule *Bruton* and its progeny. . . .") (citations omitted); *United States v. Lung Fong Chen*, 393 F.3d 139, 150 (2d Cir. 2004) ("[W]e see no indication that *Crawford* overrules *Richardson* or expands the holding of *Bruton*."), *cert. denied*, 546 U.S. 870 (2005). Thus, it remains the law that "out-of-court statements of a non-testifying witness that only inferentially incriminate a defendant when linked to other evidence introduced at trial do not violate the Sixth Amendment because an instruction not to consider such a statement will be

15

considered effective to remove it from the jury's consideration." *Harper*, 527 F.3d at 403. "But statements that obviously incriminate a defendant, involve an inference that a jury could make immediately without hearing other evidence, and that a judge could easily predict prior to trial, before hearing any evidence, would be barred under the rationale of *Bruton*, do violate the Confrontation clause." *Id.*

Here, the Special Agents' written account in the interview notes of what Malik said at the proffer session was testimonial. *See Davis v. Washington*, 547 U.S. 813, 822 (2006) (statements are testimonial "when the circumstances objectively indicate that there is no . . . ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution"). The statements therefore trigger a Confrontation Clause inquiry. *See, e.g.*, *Rodríguez-Durán*, 507 F.3d at 769 ("[O]ur conclusion that *Bruton* is inapt does not necessarily mean that there was no Sixth Amendment violation as recognized by *Crawford*."). Presumably, Defendant will be able to cross-examine the Special Agents who relate Malik's alleged statements to the jury, but Defendant cannot cross-examine Malik if Malik exercises his Fifth Amendment right not to incriminate himself. Nevertheless, "[w]hen redaction is coupled with a limiting instruction to the jury that it may not consider the evidence against anyone other than the confessing defendant, a defendant's Confrontation Clause rights are sufficiently protected." *United States v. Ward*, 377 F.3d 671, 677 (7th Cir. 2004) (citing *United States v. Sutton*, 337 F.3d 792, 799 (7th Cir. 2003)); *see also, e.g.*, *United States v. Hatfield*, No. 08-30020, 2008 WL 4516320, at *1 (S.D. Ill. Oct. 3, 2008) (denying motion *in limine* to exclude statement of co-defendant because "[t]he law is clear under *Bruton* or *Crawford* that defendant has to be 'expressly implicated as a participant in the crime' in the

16

statements for there to be a violation of confrontation rights") (citations omitted). A limiting instruction in this case will protect Defendant's rights under the Confrontation Clause. *See, e.g.*, *United States v. Homick-Van Berry*, 240 Fed. App'x 966, 971-72 (3d Cir. 2007) (unpublished opinion) (concluding that the district court's limiting instruction was sufficient to avoid a Confrontation Clause violation where the statements were "not inculpatory," "did not expressly implicate [the defendant]", and "were not powerfully incriminating on their face").

**IV. CONCLUSION**

For these reasons, Defendant's Motions will be denied.

An appropriate Order will follow.

BY THE COURT:

R. Barclay Surrick, J.